IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DANIEL T. STRINGER**,

    Plaintiff,

v.

**UNITED STATES DEPARTMENT OF
AGRICULTURE (FOREST SERVICE)**,

    Defendant.

_____

**Civ. No. 6:13-cv-01902-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

Plaintiff Daniel Stringer was injured while snowmobiling in the Deschutes National Forest. The United States Forest Service (Forest Service), which manages the Deschutes National Forest, allows members of the public to snowmobile on approximately 600 miles of trail within the forest free of charge.

The Court is asked to consider whether the Forest Service waived sovereign immunity under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671–80. Because Stringer neither paid a "charge" nor engaged or intended to engage in an activity subject to a "charge," this Court finds that the Forest Service did not waive its immunity. Thus, defendant's motion to dismiss, ECF No. 10, is GRANTED.

## PROCEDURAL AND FACTUAL BACKGROUND

This action arises out of a snowmobile accident occurring in the Deschutes National Forest. On March 24, 2012, Stringer, along with five companions, rented five snowmobiles at a rental facility in Bend, Oregon. Compl. 3, ECF No. 1; Decl. of James E. Cox, Jr. 5, ECF No. 13-

1 – OPINION AND ORDER

1. After receiving a 15-minute training tutorial, the group traveled to Wanoga Sno-Park. Decl. of James E. Cox, Jr. 2, ECF No. 13-3. Wanoga Sno-Park, a snowmobiling park located within the Deschutes National Forest between Bend and Mount Bachelor, is open to the public free of charge.[1] *See* Decl. of Kevin W. Larkin 2–3, 5 ECF No. 11.

At approximately 10 a.m., Stringer and his group departed on snowmobile trail #5 heading west toward Elk Lake Resort. Decl. of James E. Cox, Jr. 5, ECF No. 13-1. Stringer operated a two person sled accompanied by his fiancée, Danielle McBurnett. Compl. 3, ECF No. 1. Between 11:30 a.m. and 11:45 a.m., the group arrived at Elk Lake Resort. Decl. of James E. Cox, Jr. 5, ECF No. 13-1. After a brief break, the group decided to postpone lunch and return to Wanoga Sno-Park on snowmobile trail #5 heading east. Compl. 3, ECF No. 1; Decl. of James E. Cox, Jr. 5, ECF No. 13-1.

At approximately 12:50 p.m., the group approached a bridge at Falls Creek. *See* Decl. of James E. Cox, Jr. 1, ECF No. 13-1. Stringer, accompanied by McBurnett, sped up and pulled away from the group. *Id*. at 5. As he pulled away, Stringer left the trail and cut across an open meadow. Compl. 3, ECF No. 1. Realizing that the meadow led to an embankment of Falls Creek, Jessi Davis, a member of the snowmobiling group, sped up in an unsuccessful attempt to warn Stringer. Decl. of James E. Cox, Jr. 5, ECF No. 13-1. Stringer's snowmobile launched over the creek and crashed into the far embankment head-on. Compl. 3, ECF No. 1. Stringer and McBurnett fell approximately 15 feet to the bottom of the ravine; resulting in extensive injuries. *Id*. at 3, 5. Stringer now seeks damages under the FTCA. *Id*. at 6.

## STANDARD OF REVIEW

---

[1] The state of Oregon does charge a $5 vehicle parking fee to park in the Wanoga Sno-Park parking lot. *See* Compl. 2–3, ECF No. 1; OREGON DEP'T OF TRANSP., OREGON.GOV: SNO-PARK PARKING PERMITS, http://www.oregon.gov/ODOT/DMV/pages/vehicle/sno_park_permits.aspx (last visited Oct. 20, 2014).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the Court must accept all allegations of material fact as true and construe them in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If the complaint is dismissed, leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citations and internal quotation marks omitted).

## DISCUSSION

Plaintiff, in reliance on *Coleman v. Oregon Parks & Recreation Dep't*, 347 Or. 94 (2009), contends that defendant waived sovereign immunity under the FTCA by making a "charge" under ORS §§ 105.672(1)(a), 105.688(3). In response, defendant contests plaintiff's interpretation of *Coleman* and argues that a charge was not made, and even if made, Wanoga Sno-Park is specific, separate, and distinct from any land that made such a charge.

The FTCA waives the sovereign immunity of the United States for claims based on the negligence of United States employees. 28 U.S.C. § 1346(b)(1); *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995). The liability of the United States is determined "in the same manner

3 – OPINION AND ORDER

and to the same extent as a private individual in like circumstances." 28 U.S.C. § 2674. Because plaintiff's accident occurred in Oregon, this action is governed by Oregon law. 28 U.S.C. § 1346(b)(1); *Yanez*, 63 F.3d at 872.

As stated in ORS § 105.676, "it is the public policy of the State of Oregon to encourage owners of land to make their land available to the public for recreational purposes . . . by limiting their liability toward persons entering thereon for such purposes . . . ." ORS § 105.682[2] advances this policy by granting "immunity to landowners who open their land to the public for recreational purposes." *Coleman*, 347 Or. at 97.

ORS § 105.688, however, limits the immunity provided in ORS § 105.682. ORS § 105.688 provides, in relevant part:

> (3) Except as provided in subsection[] (4) . . . of this section, the immunities provided . . . do not apply if the owner makes any charge[3] for permission to use the land for recreational purposes . . . .
>
> (4) If the owner charges for permission to use the owner's land for one or more specific recreational purposes and the owner provides notice in the manner provided by subsection (8) of this section,[4] the immunities . . .

---

[2] ORS § 105.682 provides:

> (1) Except as provided by subsection (2) of this section, and subject to the provisions of ORS 105.688, an owner of land is not liable in contract or tort for any personal injury, death or property damage that arises out of the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products when the owner of land either directly or indirectly permits any person to use the land for recreational purposes, gardening, woodcutting or the harvest of special forest products. The limitation on liability provided by this section applies if the principal purpose for entry upon the land is for recreational purposes, gardening, woodcutting or the harvest of special forest products, and is not affected if the injury, death or damage occurs while the person entering land is engaging in activities other than the use of the land for recreational purposes, gardening, woodcutting or the harvest of special forest products.
>
> (2) This section does not limit the liability of an owner of land for intentional injury or damage to a person coming onto land for recreational purposes, gardening, woodcutting or the harvest of special forest products.

[3] ORS § 105.672(1)(a) defines "Charge" as "the admission price or fee requested or expected by an owner in return for granting permission for a person to enter or go upon the owner's land." This definition excludes "the fee for a winter recreation parking permit or any other parking fee of $15 or less per day." ORS § 105.672(1)(c).

[4] ORS § 105.688(8) provides:

4 – OPINION AND ORDER

> apply to any use of the land other than the activities for which the charge is imposed. If the owner charges for permission to use a specified part of the owner's land for recreational purposes and the owner provides notice in the manner provided by subsection (8) of this section, the immunities . . . apply to the remainder of the owner's land.

Plaintiff contends that, under *Coleman*, defendant waived immunity by charging "a fee for *any* use of the land." Pl.'s Resp. to Def.'s Mot. to Dismiss 5, ECF No. 15 (emphasis in original). Specifically, plaintiff argues that because defendant charged third-parties[5] a camping fee or a ski-lift fee within the Deschutes National Forest, defendant waived recreational immunity as to plaintiff's injury occurring in that same forest. *Id*. at 5–8. This Court looks to *Coleman*.

In *Coleman*, plaintiffs Bradley and Bonnie Coleman arrived at William M. Tugman State Park (Tugman Park) intending to camp overnight. 347 Or. at 96; *Coleman v. Oregon Parks & Recreation Dep't* (*Coleman App. Ct.*), 221 Or. App. 484, 486 (2008), *rev'd*, 347 Or. 94 (2009). At that time, Tugman Park charged a fee for campsite and gazebo rental, but was otherwise open to the public free of charge. *Coleman*, 347 Or. at 96. Bradley, having arrived at the campsite, decided to explore the park with a friend on their mountain bikes. *Coleman*, 347 Or. at 96; *Coleman App. Ct.*, 221 Or. App. at 486. While on a designated trail, Bradley rode his bike off a connected bridge, which lacked a ramp on one side. *Coleman App. Ct.*, 221 Or. App. at 486.

---

> (8) Notices . . . may be given by posting, as part of a receipt, or by such other means as may be reasonably calculated to apprise a person of:
>
>> (a) The limited uses of the land for which the charge is made, and the immunities provided under ORS 105.682 for other uses of the land; or
>>
>> (b) The portion of the land the use of which is subject to the charge, and the immunities provided under ORS 105.682 for the remainder of the land.

[5] Neither plaintiff nor any member of his snowmobiling group paid a camping fee or purchased a ski-lift ticket.

5 – OPINION AND ORDER

The Supreme Court, in a four-to-three decision, denied defendant's motion for summary judgment and concluded that defendant "did not establish that it made 'no charge for permission to use' Tugman Park." *Coleman*, 347 Or. at 104. The Court further provided:

> To be entitled to immunity, the landowner must make *no* charge for permission to use the land. If the landowner makes a charge for permission to use the its land, immunity does not apply, even if the injured person is not engaged in the use that was the basis for the charge at the time of injury. So, as in this case, if the landowner makes a charge to use a park for camping, the landowner forfeits its immunity, even if a camper is injured while biking.

*Id*. at 102–103 (emphasis in original). Plaintiff, in reliance on an excerpt from this quoted material, seeks to extend *Coleman* to the current action. This Court declines to do so.

The Deschutes National Forest comprises approximately 1.8 million acres of land, including three independent ranger districts. Decl. of Kevin W. Larkin 2, ECF No. 11. A fee charged at one end of the Deschutes National Forest cannot, as a matter of public policy, waive immunity at the other end of the same forest, thousands of miles away, simply because the government made a charge.[6] *See Hannon v. United States*, 801 F. Supp. 323, 327 (E.D. Cal. 1992) ("The fact that somewhere else in the Inyo National Forest someone other than the plaintiff is charged for services does not negate the immunity defense throughout the Forest."). As articulated in *Coleman*, there must be some requisite relationship between the fee charged and the injured plaintiff. 347 Or. at 103–104 ("As *campers*, plaintiffs were entitled to use all of Tugman Park, including its bike trials . . . . The state also did not establish that as a *camper*,

---

[6] The *Coleman* Court was presented with an analogous hypothetical:

> Why, queries the state, would the legislature preclude recreational immunity for the owner of a 100-acre property that charged to use an equestrian riding center located on 10 acres of that land, but made 90 acres available to the public for free, when the plaintiff was injured hiking on the separate and distinct 90 acres?

347 Or. at 103. The Court declined to address the hypothetical, but indicated that "the land" as used in ORS § 105.688(2)(a) (amended 2009 and 2010), "may refer to a specific, separate, and distinct piece of real property." *Id*.

6 – OPINION AND ORDER

plaintiffs' use was limited to the piece of land associated with the charge.") (emphasis added); *see also Colin v. United States*, No. C-99-5045 EDL, 2001 WL 776998, at *12 (N.D. Cal. May 17, 2001) (awarding summary judgment to defendant where "Plaintiff and his companions paid no fee to obtain access to the lake, either directly or indirectly").[7]

Stringer, unlike the Colemans, lacked this requisite relationship. Stringer was neither a *camper* nor a *skier*;[8] he was a *snowmobiler*. As a *snowmobiler*, Stringer engaged in an activity not subject to a "charge" under ORS § 105.672(1)(a). This conclusion is further supported by Justice Balmer's dissenting opinion. In that opinion, Justice Balmer explained:

> [U]nder the majority's reasoning, if a person decided to rent a campsite (or to rent the gazebo), the state may *not* assert recreational immunity as to injuries suffered by that person while riding on a bike trial, but the state *may* assert such immunity as to a person who does not rent a campsite and who incurs an identical injury in an identical place on the land.

*Coleman*, 347 Or. at 109 (Balmer, J., dissenting). Stringer, like the dissent's hypothetical non-camping *bicyclist*, is subject to recreational immunity. Had Stringer been either a *camper* or a *skier*, the state may have waived recreational immunity under ORS § 105.688. However, that factual scenario is not before this Court.

## CONCLUSION

For these reasons, defendant's motion to dismiss, ECF No. 10, is GRANTED.

IT IS SO ORDERED.

---

[7] In *Colin*, plaintiff was injured while diving into Lake Sonoma. 2001 WL 776998, at *1. At that time, the United States charged fees for overnight camping and boat launching. *Id.* at *11. Plaintiff, however, only engaged in activities that were free of charge: "day use of the swimming and picnic facilities." *Id.*

[8] This Court reserves judgment as to whether either the camping fee or ski-lift fee qualify as "charges" under ORS § 105.672(1)(a).

7 – OPINION AND ORDER

DATED this 21st day of October, 2014.

_____
**Michael J. McShane**
**United States District Judge**

8 – OPINION AND ORDER